IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ISABEL RANGEL,<br>   *Plaintiff,*<br><br>v.<br><br>MICHAEL ASTRUE,<br>   *Defendant.* | §<br>§<br>§<br>§  CIVIL ACTION NO. H-07-1959<br>§<br>§<br>§ |

## MEMORANDUM AND ORDER

Pending before the Court in this appeal from a denial of Social Security disability benefits are Plaintiff's Motion for Summary Judgment (Docket Entry No. 9) and Defendant's Motion for Summary Judgment (Docket Entry No. 10). The Court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's motion, and **REMANDS** this case for further proceedings not inconsistent with this opinion.

### I. CASE BACKGROUND

#### A. Procedural History

Plaintiff filed this action pursuant to 42 U.S.C. § § 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's claims for disability benefits and supplemental security income benefits under Title II and Title XVI of the Social Security Act ("the Act").

Plaintiff filed her application for disability insurance benefits and supplemental security income benefits on September 14, 2004, alleging that diabetes, bilateral arm pain, and left ear hearing deficiency had rendered her disabled since March 7, 2002. Tr. 43-46. The Commissioner denied her application at the initial and reconsideration levels of administrative review, and Plaintiff requested a hearing before an administrative law judge (ALJ). At the hearing held in Houston, Texas, on November 6, 2006, the ALJ heard testimony from Plaintiff, a medical expert (ME), and a vocational expert (VE). *Id.* 409-33. The ALJ issued a decision on November 21, 2006, finding Plaintiff not disabled as of March 7, 2002, through the date of the decision. *Id.* 14-25. He found that Plaintiff had severely medically determinable impairments of type II diabetes, left sensorineural hearing loss, and right carpal tunnel syndrome status-post release. *Id.* 19. He further found that, prior to March 3, 2005, Plaintiff retained the residual functional capacity (RFC) to perform light work with no lifting above ten pounds with her right arm, and that, beginning March 3, 2005, a RFC to perform all unskilled light work. *Id.* 20.

Based on testimony from the VE, the ALJ found that Plaintiff could not perform her past relevant work, but that, based on her age, education, work experience, and RFC, she could perform other work existing in significant numbers in the national economy, both before and after March 3, 2005. *Id.* 23-24. Plaintiff requested reconsideration of the ruling based on her submission of additional medical information, but the Appeals Council denied

a review on April 14, 2007. Plaintiff filed the pending lawsuit pursuant to 42 U.S.C. § 405(g).

### B. Factual Background

Plaintiff, forty-five years of age at the time of the ALJ hearing, was born on January 28, 1961. She completed the tenth grade and did not receive a GED or vocational training. Tr. 414-15. She last worked on March 7, 2002, in airport food catering and delivery, which required her to load a catering truck for six flights per day. Her work required significant lifting, carrying, running, and jumping. She stopped working in 2002 after one of the forty-pound tray carriers injured her right hand. She underwent two surgical procedures on the hand and completed two years of hand therapy. *Id.* 415-16. She complains of limited use of the hand, and has problems lifting heavy items or opening and holding things. Cramping of her thumb and elbow pain cause her problems with hair grooming, bathing, buttoning clothes, driving a car, and writing. *Id.* 417-18. She describes her pain level as a "five" on a scale of one to ten, and takes Tylenol or similar medication to control the hand pain. *Id.* 418-19. She can lift and carry up to ten pounds on a limited basis without feeling pain. *Id.* 419.

Plaintiff did not return to work after her injury in 2002 because she could no longer do the required lifting and needed surgery and medications. *Id.* p. 420. In answer to the ALJ's question regarding her other medical complaints, Plaintiff referenced loss of sensation and nerve damage in her left hand requiring her to wear a band, left ear deafness,

3

and reduced hearing in her right ear. She stated she was currently taking metformin for diabetes, an antidepressant for the past two months to help her sleep at night, a "cholesterol medicine," a "high blood pressure medicine," and Tylenol for pain. *Id.* 420. Plaintiff further stated that during the past year and a half she wore "shoe braces" to help her walk and to prevent foot pain. She can walk between forty minutes and an hour before needing to rest. *Id.* 421.

The ME testified that Plaintiff is right-hand dominant, has "poorly controlled" type II diabetes which was diagnosed in 1997, has profound hearing loss in her left ear since age ten, and normal hearing test results for her right ear in 2005. *Id.* 423. He stated that Plaintiff's poorly-controlled type II diabetes "is pertinent with somebody complaining of carpal tunnel . . . with neuropathy." *Id.* 423. He described her as obese with a body mass index of 33 as of April 2005. She was diagnosed with right carpal tunnel syndrome (CTS) in March 2002. The CTS and a right trigger thumb were surgically released in April 2002. These two surgeries were redone, with a right ulnar nerve transposition, in February of 2003. She was released to return to work by her treating physicians in August 2003, and given restrictions in September 2003 against lifting or carrying anything greater than ten pounds. *Id.* 424. Her follow-up examination in November 2004 was normal in all respects except as to a non-significant decreased range of motion of the elbow. She was given a

functional capacity at light level[1] at that time. *Id.* 425. She was released to return to work without restriction on March 3, 2005. The ME states that Plaintiff's current medications are without debilitating effects, and that her left hearing loss did not require work restrictions. *Id.* 426-27. Nothing in the medical records evidenced work difficulties related to the right ear. *Id.* 427.

The VE stated that Plaintiff can no longer perform her past relevant work as an airline catering helper. *Id.* 429. In an initial hypothetical, the ALJ asked the VE what jobs could be performed by an individual of Plaintiff's age, educational background, work history, and medical restrictions as existed prior to March of 2005. The VE responded that with a reduced use of the hand (*i.e.*, no frequent use of the wrist and hand or repetitive motions, with lifting restrictions during post-surgical recovery), it would limit the light, unskilled base to approximately thirty percent, with job examples including child attendant, bottling line attendant, or an assembly press operator. *Id.*, 429-30, 432. He further stated that, using the five-county Houston area as a guide for local numbers, there were approximately 1,600 child attendant jobs available locally and 200,000 nation-wide; 800

---

[1] "Light" work is defined by the regulations as: "[L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

bottling line attendant jobs available locally and 185,000 nation-wide; and 900 assembly press operator jobs available locally and 195,000 nation-wide. *Id.* 429, 432.

The VE further stated that if the hypothetical individual's hand-use restrictions were lifted, the full range of light jobs would become available. As a further hypothetical, the VE was then asked to consider the effects of a permanent hearing loss on the base of light, unskilled jobs. The VE stated that there would be an erosion of only twenty to twenty-five percent of the light unskilled job base, but that even assuming full erosion, there would be a minimum of 25,000 jobs at the light level. *Id.* 430-31.

### C.   ALJ's Findings

The ALJ found that Plaintiff was insured for disability benefits through December 31, 2007, and that she had not engaged in substantial gainful activity since March 7, 2002. He found that Plaintiff's right carpal tunnel syndrome status post-release, type II diabetes, and left sensorineural hearing loss were "severe impairments," but that none of the impairments met or equaled any of the enumerated impairments in the Listings. Tr. 19.

According to the ALJ, Plaintiff retained a RFC to perform light work with no lifting greater than ten pounds with the right upper extremity. The ALJ further found that as of March 3, 2005, Plaintiff retained a RFC to perform the full range of unskilled light work. *Id.* 20. The ALJ noted that although Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. *Id.*

22. He found that Plaintiff was unable to perform any past relevant work, but that, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. *Id.* 23.

The ALJ further found that Plaintiff has not been under a disability from March 7, 2002 through the date of his decision, and denied relief for disability insurance and supplemental security income benefits. *Id.* 25.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

A motion for summary judgment under Federal Rules of Civil Procedure Rule 56 requires the Court to determine whether the moving party is entitled to summary judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). A genuine issue of material fact exists if a reasonable fact finder could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views the evidence is the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

Judicial review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether substantial evidence in the record supports the

decision and whether the ALJ applied proper legal standards in evaluating the evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). If the Commissioner's decision satisfies both of these requirements, it must be affirmed. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

### A. "Substantial Evidence"

The widely-accepted definition of substantial evidence is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). It is "something more than a scintilla but less than a preponderance." *Id.* The Commissioner has the responsibility of deciding any conflict in the evidence. *Id.* If the findings of fact contained in the Commissioner's decision are supported by substantial evidence appearing in the record, they are conclusive, and this Court must affirm. 42 U.S.C. § 405(g).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the Court overturn it. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). In applying this standard, the Court is to review the entire record, but may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *See Brown*, 192 F.3d at 496. In other words, the Court is to defer to the Commissioner's decision as much as possible without making its review meaningless.

**B.     Legal Standard**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving that she is disabled within the meaning of the Act. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423 (d)(3). A claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured. *Ivy v. Sullivan*, 898 F.2d 1045, 1948 (5th Cir. 1990).

To determine whether a claimant is capable of performing any substantial gainful activity, the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

(1)     a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

(2)     a claimant will not be found to be disabled unless he has a 'severe impairment';

(3)     a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors;

 (4) a claimant who is capable of performing work that he has done in the past must be found 'not disabled'; and

 (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and [RFC] must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears the burden of proof on the fifth step. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999); *Brown*, 192 F.3d at 498. The Commissioner can satisfy his burden either by reliance on the Medical-Vocational Guidelines of the Regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner satisfies his burden of proof as to the fifth step, then the burden shifts back to the claimant to prove she cannot perform the work suggested. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. *Greenspan*, 38 F.3d at 236.

### III. ANALYSIS

In her motion for summary judgment, Plaintiff argues that because substantial evidence does not support the finding of her diabetes as "fully controlled," the Commissioner erred in finding that she had an RFC allowing her to perform competitive work at the light level. Plaintiff adds that while she "differs" with other conclusions regarding her impairments, the "salient error at hand" concerns the erroneous finding that

her diabetes is "fully controlled." (Docket Entry No. 9, p. 3.) In support, Plaintiff correctly notes that the ME informed the ALJ at the hearing that Plaintiff "has diabetes type II diagnosed in 1997, *poorly controlled* [.]" Tr. 423 (emphasis added). The ALJ, however, stated in his decision that, according to the ME, Plaintiff's type II diabetes was *"fully controlled."* Id. 20 (emphasis added). Plaintiff contends that, because of this error, the ALJ erroneously concluded that she had a RFC sufficient to perform competitive full time light work.

Plaintiff further argues that the additional medical records of her treating physician, which she submitted to the Appeals Council, clearly evince the uncontrolled status of her diabetes. Relevant portions of these new records reflect that, on February 26, 2007, Harris County Hospital District physician Mihir Parikh, M.D., diagnosed Plaintiff with "DM NEURO MANIF TYPE II, UNCONTROLLED" and referred her to physical/medical rehabilitation. *Id.* 9. It is unclear, however, from either these medical records or the pleadings whether the diagnosis of "DM NEURO MANIF TYPE II, UNCONTROLLED" is referring to diabetic neuropathic symptoms or the diabetes mellitus itself. It is also unclear whether such condition existed during the relevant time frame for purposes of the instant benefits claims.

The ALJ specifically found that type II diabetes was one of Plaintiff's "severe impairments," and that her impairments, alone or combined, did not meet or medically equal one of the listed impairments. *Id.* 19. Accordingly, and as argued by Plaintiff in her motion

11

for summary judgment, the question of the nature and status of her diabetes is material to her RFC and whether she can perform the full range of unskilled light work, and whether her poorly controlled diabetes, in conjunction with her other impairments, meets or equals a listed impairment.

In his motion for summary judgment, Defendant argues that the ALJ's statement regarding Plaintiff's "fully controlled" diabetes was a typographical error, and that, regardless, Plaintiff presented no evidence that her diabetes produced disabling, functional limitations. (Docket Entry No. 10, p. 5.) This Court declines to accept Defendant's argument that the ALJ's use of the term "fully controlled" was a typographical error. Defendant does not argue, and the record does not show, that there is substantial evidence of Plaintiff's diabetes being "fully controlled." Moreover, the Fifth Circuit requires an ALJ to explain his reasons for rejecting evidence in favor of the claimant. *Falco v. Shalala*, 27 F3d 160, 163 (5th Cir. 1994). The ALJ in the instant case did not explain why he rejected medical evidence that Plaintiff's diabetes was "poorly controlled."

In light of the record, it is clear that the ALJ either misunderstood, or rejected without explanation, the medical evidence regarding the "poorly controlled" status of Plaintiff's diabetes. As a result, the ALJ most likely improperly weighed and determined the evidence and credibility of Plaintiff's complaints regarding the functional limitations caused by her diabetes. Consequently, such misunderstanding or unexplained rejection of the medical evidence was a material factor in, and casts doubt on the propriety of, the ALJ's findings

regarding Plaintiff's RFC and her ability to perform light level full time work, and his determination of whether Plaintiff's diabetes, in conjunction with other impairments, met or equaled a listed impairment.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's motion for summary judgment (Docket Entry No. 9), **DENIES** Defendant's motion for summary judgment (Docket Entry No. 10), and **REMANDS** this case to the ALJ for further proceedings not inconsistent with this Memorandum and Order.

The Clerk will provide copies to the parties.

Signed at Houston, Texas, on this the 27th day of June, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE